IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT A. GREEN, individually )
and as the representative of a class )
of similarly-situated persons, )
                                  )
            Plaintiff, )
                                   )
     vs. )         Case No. 09 C 1541
                                   )
ANTHONY CLARK INTERNATIONAL )
INSURANCE BROKERS, LTD. )
and JOHN PODORIESZACH, )
                                   )
            Defendants )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendants Anthony Clark International Insurance Brokers, Ltd. ("Anthony Clark Brokers") and John Podorieszach have moved to dismiss the claims of plaintiff Robert Green. For the reasons stated below, the Court denies the motion in part.

## Background

Green alleges that on May 31, 2007, the defendants sent him an unsolicited message via his facsimile machine. The message read as follows:

Dear Bob,

Re: Seeking Acquisition/Merger - Property & Casualty Insurance Agencies

Our firm Sierra Consulting has been retained by our confidential client to seek reputable and well-run General Insurance Agencies (Commercial and/or Personal Lines), that may be willing to sell or merge their business(s). Since we are acting on behalf of the buyer, there are no charges or finders fees which are payable by you, the vendor.

> Our client is a full service international general insurance brokerage firm offering a full spectrum of insurance products. They are seeking general insurance agencies having commission/fee revenues of $1 million and above and or [sic] independent contractors that have a minimum of $100,000 in commission/fees.
>
> The purchase price is dependent on a vast array of criteria. In the past, our client has paid up to a 2X multiple on commission revenue and up to a 90% cash down payment. Should you be interested in further discussing the possibility of selling or merging your agency/business, please contact John or Peter, Acquisitions Department, on our direct toll free line at: 1-(877) 378-8811 or you may email me at: johnpodo@shawcable.com.
>
> All correspondence or communication will be held in the strictest confidence.
>
> Sincerely,
> Sierra Consultants
> Mergers and Acquisitions
>
> If you do not wish to receive further communication from our firm, please fax this letter back to (707) 796-7198,

Green alleges that the defendants' sending of the fax violated the federal Telephone Consumer Protection Act and the Illinois Consumer Fraud and Deceptive Business Practices Act and also constituted conversion under Illinois common law. He has sued on behalf of a class of similarly situated persons. Green filed his suit in state court, and Anthony Clark Brokers removed it to this Court based on federal question jurisdiction.

## Discussion

To survive a motion to dismiss for failure to state a claim, a plaintiff must make enough factual allegations to raise a right to relief above a "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007). In deciding a motion to dismiss, the Court accepts the complaint's factual allegations as true and considers those allegations in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*

*Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

1. **Telephone Consumer Protection Act**

In count one of his complaint, Green alleges that under Podorieszach's authorization and direction, Anthony Clark Brokers transmitted an unsolicited facsimile advertisement in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Under the TCPA, it is unlawful

> to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless–
>
> > (i) The unsolicited advertisement is from a sender with an established business relationship with the recipient;
> >
> > (ii) the sender obtained the number of the telephone facsimile machine through –
> >
> > > (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or
> > >
> > > (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,
> >
> > except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before such date of enactment; and
> >
> > (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),
>
> except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a

> telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E) . . . .

47 U.S.C. § 227(b)(1)(C).

The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission . . . ." *Id.* § 227(a)(5). Defendants argue that the fax sent to Green was not an advertisement because it did not advertise the commercial availability of a product, good, or service and was not sent indiscriminately. They contend that the fax merely sought information on whether Green was interested in discussing the possibility of selling or merging his insurance agency with their client.

Defendants rely on, among other cases, *Phillips Randolph Enters. LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851 (N.D. Ill. 2007), and *Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa. 1994). In *Phillips Randolph Enterprises*, the defendant sent a fax promoting a research study. The fax stated on its face that potential participants had to pre-qualify in order to participate in the study. This was crucial to the court's holding that the transmitted facsimile was not an advertisement. The court held that because a research study is not a commercially available service and the fax included a clear notice of a pre-screening requirement, the fax was not an advertisement covered by the TCPA. *Phillips Randolph Enters.*, 526 F. Supp. 2d at 853. In *Lutz Appellate Services*, the plaintiff sued a former employee and partner for sending an unsolicited fax that promoted employment opportunities. It

4

argued that the employment solicitations amounted to offers of property, an argument that the court rejected. *Lutz Appellate Servs.*, 859 F. Supp. at 181.

The fax defendants sent to Green is dissimilar to those in *Phillips Randolph Enterprises* and *Lutz Appellate Services*. Defendants' fax to Green arguably promoted the commercial availability of a service, namely the service of brokering a sale of an insurance agency. Defendants argue that the fax was an invitation to engage in preliminary discussions and discern whether Green would qualify for the offer. The fax, however, does not advise the recipient to call to see if he qualifies but rather encourages him to call to "further discuss the possibility of selling." At least for purposes of a motion to dismiss, Green has sufficiently alleged that defendant's fax to him constituted an unsolicited advertisement within the meaning of the TCPA. Because Green also alleges that the defendants did not obtain his permission to send him the fax and that he had no existing business relationship with either defendant, he has sufficiently alleged a violation of the TCPA.

**2.   Conversion**

Count 2 is Green's state law conversion claim. To state a claim for conversion under Illinois law, a plaintiff must allege that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 703 N.E.2d 67, 70 (1998).

Green's conversion claim is based on his allegation that by sending the

unsolicited fax, defendants converted the toner and paper in his fax machine. He alleges that he had an unqualified and immediate right to possession of his fax machine and the associated supplies; defendants' sending of the fax deprived him of paper and toner that, as a result, he could not use for other purposes; he and other similarly situated recipients of the fax suffered economic damage; and defendants should have known their conduct was wrongful and without the recipients' consent.

Defendants argue that because they never took possession of Green's property, he cannot state a claim for conversion. The Court disagrees. "Altering a chattel to materially change its characteristics can constitute conversion, even if the defendant never comes into possession of the chattel." *Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 782 (N.D. Ill. 2008). The Court also agrees with Green that toner and paper constitutes identifiable property that can be the subject of a conversion claim. The claim may not be worth much in dollars, but that does not make it legally deficient. *See id.*

Defendants also contend that Green's claim is deficient because he does not allege that he made a demand for the return of the allegedly converted paper and toner. Green argues, however, that making a demand would have been futile because his property – the paper and the toner – had been so altered that they were virtually destroyed due to the unsolicited fax transmission. The Court agrees; once the fax was received, the paper and toner it required were no longer usable, making a demand for their return futile. *See, e.g., Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *9 (N.D. Ill. May 27, 2008) (demand useless and need not be alleged if it would be futile, which is the case if defendant has altered plaintiff's property so that it

cannot be returned unaltered). As a result, Green's failure to allege a demand for the property's return does not defeat his conversion claim.

### 3. Illinois Consumer Fraud and Deceptive Business Practices Act

Count 3 is Green's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). To state a claim under ICFA, the plaintiff must allege a deceptive or unfair act or practice by the defendant; defendant's intent that the plaintiff rely on the deceptive or unfair act; and the deception or unfairness occurred during commerce or trade activity. *See Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417, 775 N.E.2d 951, 960 (2002).

Defendants argue that Green has failed to allege that they engaged in any conduct that could be considered unfair within the meaning of ICFA. The factors considered to determine whether a practice or act is unfair include whether it offends public policy; whether it is immoral, oppressive, or unethical; and whether it causes substantial injury to consumers. *See id.* at 417-18, 775 N.E.2d at 961 (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233 (1972)). To be considered unfair, a practice need not meet all three of these criteria; a deficiency in one element can be compensated by the strong presence of another element. *Id.* at 418, 775 N.E.2d at 961.

Green alleges that the defendants' transmission of unsolicited fax advertisements was unfair and oppressive because it deprived him and others like him of any meaningful choice with regard to acceptance of the fax transmissions and that if left unchecked, it would lead to consumer facsimile machines becoming inundated with

7

unwanted advertisements.  Green also alleges that through repeated conduct, the defendants caused economic damage to him and others who received the faxes, including the loss of paper, toner, ink, and wear and tear on the fax machines.

The first factor involves whether defendants' alleged conduct offends public policy.  Transmitting unsolicited facsimile advertisements violates the federal TCPA and constitutes a misdemeanor under Illinois law.  *See* 720 ILCS 5/26-3(b).  The defendants argue that because the fax at issue was merely an inquiry and not an advertisement, their conduct cannot be claimed to have violated public policy.  The Court already addressed these arguments in considering Green's TCPA claim; Green's allegations are sufficient to identify conduct that may be considered to offend public policy.  *See Centerline Equip. Corp.*, 545 F. Supp. 2d at 780; *Western Railway Devices Corp., v. Lusida Rubber Products, Inc.*, No. 06 C 0052, 2006 WL 1697119, at *4 (N.D. Ill. June 13, 2006).

The next factor concerns the burden that the defendant's conduct placed on the plaintiff.  Conduct is considered oppressive when it leaves the plaintiff with the lack of a meaningful choice.  In the complaint, Green alleges that defendants' conduct effectively forced him to pay for defendants' advertising and that he had no reasonable means to avoid receiving the faxes, short of turning off his fax machine.  The defendants argue that a single unsolicited facsimile is not oppressive to a plaintiff because it imposed only a minimal disruption, and the fax included a telephone number that Green could use to prevent recurring faxes.  In this regard, the Court finds persuasive the decision in *R. Rudnick & Co. v. G.F. Protection, Inc.*, No. 08 C 1856, 2009 WL 112380 (N.D. Ill. Jan.

8

15, 2009), in which the court ruled that sending unsolicited fax advertisements was oppressive despite the inclusion of a call-in number to head off later faxes, because recipients had no way to remedy the harm they experienced from receipt of the first unsolicited fax. *Id.* at *2.

Defendants also argue that a single fax does not impose enough cost to qualify as a substantial injury under *Robinson*. However, "[e]ven very small individual harms can be considered substantial, if they are part of a practice that, in the aggregate, causes substantial losses to the public as a whole." *Centerline Equip. Corp.*, 545 F. Supp. 2d at 780. Green alleges that defendants' sending of unsolicited faxes causes the depletion of paper and toner as well as unwanted wear and tear on the receiving fax machines. He also alleges that beyond his own injuries, there are other individuals who were similarly injured. Though any harm Green suffered is minimal, when similarly-effected individuals are considered in the aggregate, a substantial injury exists. *See id.* at 781.

For these reasons, the Court declines to dismiss count three.

## Conclusion

For the reasons stated below, the Court declines to dismiss any of Green's claims and thus denies the defendants' motion to dismiss in part [docket no. 10]. There remains for determination defendants' argument that the TCPA is unconstitutional. The Court deferred consideration of that argument so that defendants could give notice to the Attorney General of the claim of unconstitutionality. At the upcoming status hearing on August 25, 2008, the Court will expect the government to advise regarding whether it

wishes to weigh in on that issue.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 17, 2009