# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT A. GREEN, individually and as the representative of a class of similarly situated persons, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 09 C 1541 |
| ANTHONY CLARK INTERNATIONAL INSURANCE BROKERS, LTD. and JOHN PODORIESZACH, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Robert Green has sued Anthony Clark International Insurance Brokers, Ltd. ("Anthony Clark Brokers") and John Podorieszach asserting claims under the federal Telephone Consumer Protection Act (TCPA) and the Illinois Consumer Fraud and Deceptive Business Practices Act, as well as a claim for conversion under Illinois common law. Defendants moved to dismiss Green's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Court previously denied defendants' motion to dismiss in part. *See Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 C 1541, 2009 WL 2515594 (N.D. Ill. Aug. 17, 2009). The Court assumes familiarity with that decision. Remaining for determination is defendants' argument that the TCPA is unconstitutional. The Court

1

deferred consideration of that argument so that defendants could give notice to the Attorney General of the claim of unconstitutionality. The Court granted the Attorney General's motion to intervene, and he submitted a brief in opposition to defendants' motion. For the reasons stated below, the Court denies the remainder of defendants' motion to dismiss.

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), the complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. When considering a motion to dismiss a complaint, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

The TCPA prohibits sending an unsolicited advertisement to a telephone facsimile (fax) machine, unless the sender has an established business relationship with the recipient. 47 U.S.C. § 227(b)(1)(C). A recipient of an unsolicited advertisement has a private right of action for an injunction and "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* § 227(b)(3). If a violation is proven to be willful or knowing, the damages may be trebled. *Id.*

Defendants contend that section 227(b)(1)(C) violates the First Amendment because it excessively restricts protected commercial speech and because it is unconstitutionally vague. Defendants also contend that the statutory entitlement to damages of $500 to $1,500 per infraction violates the Fifth Amendment's Due Process Clause and amounts to an excessive fine violative of the Eighth Amendment. The Court considers each constitutional challenge in turn.

1. **First Amendment challenge**

Defendants contend that the TCPA is a prohibited ban on commercial speech violative of the First Amendment. The constitutionality of a restriction on commercial speech is evaluated under the test established in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). Commercial speech is not protected by the First Amendment if it concerns unlawful activity or if it is misleading. *Id.* at 566. If, however, the government restricts commercial speech that concerns lawful activity and is not misleading, the party seeking to uphold the restriction must show that the asserted governmental interest is substantial and that the regulation directly advances and is not more extensive than necessary to serve that interest. *Id*. Because the parties do not argue that the speech concerns unlawful activity or is misleading, the Court considers only the remaining elements of the *Central Hudson* test.

a. **The nature of the government's interest**

Defendants contend that the government cannot prove a substantial interest because the costs associated with receiving an unwanted facsimile, at pennies per

page, are comparable to or less than the cost of receiving a telemarketing call or disposing of direct mail. Defendants rely on *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983), to support their position that the government cannot prohibit commercial speech unless the cost imposed on recipients is more than *de minimis*. *Id.* at 72 ("[The] journey from mail box to trash can . . . is an acceptable burden.").

The government's stated interests in *Bolger*, however, were based on the content of the mailings (contraceptive advertisements), not the costs imposed on recipients. In adopting the TCPA, Congress asserted an interest in protecting the recipients of unsolicited advertisements from the actual costs (in paper and toner, for instance) that the senders of the facsimiles impose on them. H.R. Rep. 102-317, at 10-13 (1991). It also asserted an interest in ensuring that "the recipient's facsimile machine . . . is [not rendered] unavailable for legitimate business messages while processing and printing the junk fax." *Id.* Prior to enacting the TCPA, businesses had "begun to express concern about the interference, interruptions and expense that junk fax ha[d] placed on them." *Id.* The Court finds that the federal government has a substantial interest in preventing the costs and burdens associated with receiving unsolicited faxed advertisements.[1] *See, e.g., Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649, 654-55 (8th Cir. 2003).

---

[1] Although advances in technology may have made the processing of unwanted facsimiles less costly, the Supreme Court recognizes a property interest even if the property "lacks a positive economic or market value." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 169 (1998). This was premised on the "longstanding recognition that property . . . consists of the group of rights which the . . . owner exercises in his dominion of the physical thing." *Id.* at 170. The importance of the government's interest, therefore, remains unchanged despite technological advancements. *Accord, Am. Blast Fax*, 323 F.3d at 655.

4

### b. Whether the TCPA directly advances the government's interest

Defendants contend that because the TCPA does not impose a ban on both commercial and noncommercial unsolicited facsimiles, it suffers from the same constitutional infirmity as the restriction at issue in *City of Cincinnati v. Discovery Network*, 507 U.S. 410 (1993). In *Discovery Network*, the city asserted an interest in the safety and aesthetics of its sidewalks when it adopted an ordinance prohibiting commercial newsracks, but not newspaper newsracks, on sidewalks and streets. *Id.* at 412-16. The Supreme Court found that the ordinance "ha[d] absolutely no bearing on the interests . . . asserted" because newspaper newsracks are just as unsafe and aesthetically displeasing as commercial newsracks. *Id.* at 425-28.

Defendants argue that, as in *Discovery Network*, distinctions between commercial and noncommercial faxes bear no relationship to the government's interest. As previously explained, however, Congress acted in response to complaints about the costs and burdens imposed by unsolicited advertisements that senders distribute via facsimile. *See* H.R. Rep. 102-317, at 10-13 (1991). The TCPA directly advances that government interest by limiting one's ability to send via facsimile an unsolicited advertisement. Furthermore, "[t]here is no reason to doubt that Congress . . . believed . . . that noncommercial faxes did not present the same problem as commercial faxes and therefore distinguished between them." *Am. Blast Fax,* 323 F.3d at 655-56. That distinction is not based on a belief in "the 'low value' of commercial speech," which was the constitutionally impermissible basis for the ordinance in *Discovery Network*. *Discovery Network*, 507 U.S. at 428.

Defendants also contend that the TCPA does not advance its asserted governmental interest because it is "pierced by exemptions and inconsistencies." *Greater New Orleans Broad. v. United States*, 527 U.S. 173, 190 (1999). Defendants' reliance on the principles established in *Greater New Orleans*, however, is misplaced. In that case, the Supreme Court determined that the government could not ban telephone and radio advertisements for private casino gambling and lotteries in states in which those actions are legal. The government asserted an interest in reducing social costs associated with gambling and assisting states that restrict or prohibit gambling. The Court determined, however, that Congress had adopted exemptions and enacted other statutes, authorizing Native American tribes and charities to conduct various forms of gambling, that "significantly curtailed the coverage" of the advertising ban. *Id.* at 178-80, 187. This rendered the federal policy of discouraging gambling, including casino gambling, "decidedly equivocal." *Id.* at 187.

The same cannot be said of the policy underlying the TCPA. Defendants claim the statute is inconsistent and full of exemptions because it does not restrict telephone advertising, which in their view is more intrusive and costly, and because other types of faxed advertisements (such as job postings or ads that do not offer a product, good or service) are not prohibited. What defendants view as more intrusive or costly, however, is beside the point. Congress documented public complaints about unsolicited advertisements sent via facsimile machines. *See* H.R. Rep. 102-317, at 10-13 (1991). The TCPA directly addresses that concern by prohibiting those who seek to sell a good, product or service from distributing their unsolicited advertisements by using the recipient's facsimile paper, toner and machine without his permission.

6

Congress was not required to also limit speech that it did not deem problematic. *See Ward v. Rock Against Racism*, 491 U.S. 781, 799 n.7 (1989) (Proper restrictions "focus[ ] on the source of the evils the [government] seeks to eliminate . . . and eliminate[ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils."). Although the same statute creates an exception for those who send advertisements in the context of established business relationships, that does not render the statute internally inconsistent. Because the TCPA focuses on the particular type of unsolicited advertising that Congress deemed problematic, it directly advances the government's asserted interest.[2]

### c. Breadth of the restriction

The final element of the *Central Hudson* test involves whether the restriction is "more extensive than is necessary to serve [the government's asserted] interest." *Cent. Hudson*, 447 U.S. at 566. The TCPA prohibits unsolicited faxed advertisements, the specific problem that Congress identified. The statute does not impermissibly prohibit all forms of unsolicited advertising, and it allows unsolicited faxed advertising if the sender has an established relationship with the fax recipient.

---

[2] For the same reasons, defendants cannot rely on *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995). In *Rubin*, the statute banned advertisements that disclose the alcohol content of beer. The government asserted an interest in preventing "strength wars" among beer brewers seeking to compete for customers on the basis of alcohol content and an interest in decreasing the extent to which consumers selected beer on the basis of alcohol content. A contradictory statute, however, required the disclosure of alcohol content on the labels of wines and spirits. Because the government had established inconsistent policies, the Supreme Court found that the challenged statute did not directly advance the government's asserted interest. The TCPA does not suffer from that same constitutional infirmity.

7

Defendants claim that the government may not restrict commercial speech if it can "achieve its interests in a manner that does not restrict speech, or that restricts less speech."  *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371 (2002).  The government is not required, however, to choose the "least restrictive" measure in this context.  *See Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 476-80 (1989); *see also Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995).  For this reason, the fact that other less restrictive measures may exist does not render unconstitutional the measure that Congress chose.  Rather, the question is whether there is a reasonable fit between the statute and the government's asserted interest.  *Fox*, 491 U.S. at 480; *see also Went For It Inc.*, 515 U.S. at 632.

The TCPA, which prohibits unsolicited faxed advertisements, fits reasonably with the government's interest in limiting the number of such advertisements that are sent to unsuspecting recipients.  The "less restrictive" alternatives defendants suggest would place the burden on fax recipients to either contact the sender of the fax or to put themselves on a "no-call" list in order to avoid receiving the unsolicited advertisement in their machines.  Congress did not act inappropriately, however, in choosing to place the burden of limiting unsolicited advertisements on the sender.  And although those who wish to sell their goods, products and services cannot fax their advertisements indiscriminately, they have ample alternative avenues to reach out to their target audience (in person, over the telephone, by mail, etc.).  As a result, the statute is not more restrictive than necessary.

For these reasons, the Court rejects defendants' contention that the TCPA is an unconstitutional restriction of commercial speech.

### 2. Vagueness challenge

Defendants also contend that the TCPA violates the First Amendment and the Due Process Clause because it is unconstitutionally vague. Defendants argue that their situation is no different from that at issue in *Lutz Appellate Servs., Inc. v. Curry*, 859 F. Supp. 180 (E.D. Pa. 1994). The Court has already explained the differences between the advertisement at issue in this case and the advertisement in *Lutz Appellate Services*. *See Green*, 2009 WL 2515584, at *2-3.

Defendants argue that the TCPA does not provide a clear definition of the term "unsolicited advertisement" and thus "does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *United States v. Olofson*, 563 F.3d 652, 659-60 (7th Cir. 2009).

The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). Defendants point out that there is no statutory definition of the terms "advertising," "advertisement," and "commercial availability."

A statute is not unconstitutionally vague, however, simply because it does not define every word. "When a word is not defined by statute, [the Court] normally construe[s] it in accord with its ordinary or natural meaning." *Weinberg v. City of Chicago*, 310 F.3d 1029, 1042 (7th Cir. 2002) (citing *Smith v. United States*, 508 U.S. 223, 228 (1993)) (internal quotations omitted). A person of ordinary intelligence knows

9

that an "advertisement," as used in the TCPA, is an announcement of something offered for sale and that "advertising" is the act of announcing something for sale. The phrase "commercial availability . . . of any property, goods, or services" is also easily understood by a person of ordinary intelligence as describing a property, good, or service that is available for sale or other commercial arrangement.

"A challenge to a statute's vagueness rest[s] on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *United States v. Lim*, 444 F.3d 910, 915 (7th Cir. 2006) (citing *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)) (internal quotations omitted). When deciding whether a statute is unconstitutionally vague, "[c]ommon sense must not be and should not be suspended." *Anderson v. Milwaukee County*, 433 F.3d 975, 978 (7th Cir. 2006). Defendants' argument that these commonly understood words are unconstitutionally vague runs afoul of these principles.

Defendants cite a number of other cases that find advertising and other statutes unconstitutionally vague. These cases are of no help to defendants, however, because the statutes in those cases defined terms using words that were inherently subjective. For instance, the restriction at issue in *National Abortion Federation v. Metropolitan Atlanta Rapid Transit Authority*, 112 F. Supp. 2d 1320 (N.D. Ga. 2000), banned ads on public transit that concerned matters of "public controversy," defining that as a matter that is "widely reported" and "arouses strong feelings in a substantial number of people." *Id.* at 1327. The court concluded these terms were "subjective" and "put too much discretion into the hands of [transit] officials." *Id.* at 1327-28. The court also

found that inconsistent interpretations among those enforcing the statute "illustrate[d] the subjective and arbitrary nature of the policy." *Id*. at 1328.

The TCPA, by contrast, does not use language that requires a subjective interpretation. Because the statute's language is objective and clearly puts persons of ordinary intelligence on notice of what is prohibited, the TCPA is not unconstitutionally vague.

### 3. Fifth and Eighth Amendment challenge

Defendants contend that the TCPA's damages provision violates the Eighth Amendment because it amounts to an excessive fine. That prohibition, however, protects against "payment to a sovereign as punishment for some offense." *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989). The damages provided by the TCPA are paid to individual plaintiffs, not the government. As a result, the TCPA's damages provision does not amount to a "fine" under the Eighth Amendment.

Defendants also contend that the TCPA's damages scheme is unconstitutional and denies them due process because it is excessive. The Supreme Court has long recognized that States have "wide latitude of discretion" to "prescribe penalties for violations of their laws." *St. Louis, Iron Mountain & S. Ry. Co. v. Williams*, 251 U.S. 63, 66 (1919). States "transcend the limitation [, however,] only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Id.* at 66-67.

The TCPA imposes a damage award of up to $500 per fax for inadvertent violations. This amount is trebled to up to $1,500 per fax when the violation is knowing and wilful. Defendants argue that the first figure is approximately 10,000 times the actual cost of receiving a fax and that the second figure is approximately 30,000 times the actual cost of receiving a fax. Defs.' Mot. at 14. The statute, however, does not purport simply to reimburse the recipient his actual costs in the lost paper and toner. Based on the concerns expressed by Congress, statutory damages are also meant to account for unquantifiable losses, such as the business interruption and time wasted on the unwanted fax. See H.R. Rep. 102-317, at 10-13 (1991); see also *St. Louis*, 251 U.S. at 66 (A penalty need not "be confined or proportioned to [one's] loss."). Furthermore, the damages provision is meant to have a deterrent effect. See *St. Louis*, 251 U.S. at 67 (The penalty is "considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence."). The Court finds that the $500 to $1,500 per fax violation is not "so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." *Id.*

Defendants also appear to complain about the possible excessiveness of the statute's damages provision if "*arguendo* a class were certified under the TCPA." Defs.' Mot. at 15. They express fear that they could face "damages in the millions for simply sending facsimiles." *Id.* Defendants rely on *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003), in which the Supreme Court found that a grossly excessive punitive damage award "furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *Id.* at 417. At present, however, this is an individual

action, and as a result there is no basis for an award at a level that would be constitutionally significant. The appropriate time to deal with that issue is later, if and after a class is certified. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953-54 (7th Cir. 2006) ("An award that would be unconstitutionally excessive may be reduced, but constitutional limits are best applied after a class has been certified."); *Parker v. Time Warner Entm't Co.*, 331 F.2d 13, 22 (2nd Cir. 2003) (expressing concern about the aggregation of statutory damages claims, but deferring consideration until after class certification).

## Conclusion

For the foregoing reasons, the Court denies the remainder of defendant's motion to dismiss. Defendants are directed to answer the complaint by February 15, 2010. A telephone status conference is set for February 16, 2010 at 9:00 a.m., to be initiated by counsel, for the purpose of setting a comprehensive schedule for the rest of the case. Counsel are directed to confer prior to that date and attempt to agree on a schedule to propose to the Court.

_____<br>
MATTHEW F. KENNELLY<br>
United States District Judge

Date: February 1, 2010